**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500
Joseph S. Maniscalco, Esq.
Jordan Pilevsky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

EAST HARLEM PROPERTY HOLDINGS, LP        Chapter 11
                                         Case No. 11-14368 (JMP)

                    Debtor.
---------------------------------------------------------------x

# CHAPTER 11 DEBTOR'S APPLICATION SEEKING ENTRY OF AN ORDER DIRECTING THE EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY, BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A., BY AND THROUGH ITS MANAGING DIRECTOR, STEVEN L. WASSER, PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF <u>BANKRUPTCY PROCEDURE</u>

East Harlem Property Holdings, LP, the debtor and debtor in possession (the "Debtor"), by its attorneys, LaMonica Herbst & Maniscalco, LLP, submits this application (the "Application") seeking the entry of an order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing the examination by Bank of America, N.A. ("BOA"), as successor by merger to LaSalle Bank, N.A., by and through its managing director Steven L. Wasser (individually and collectively, the "Witness"), and for the production and turnover of certain books, records, and documents in the possession, custody or control of the Witness, as set forth in the proposed Order (the "Proposed Order") annexed hereto, respectfully represents as follows:

## BACKGROUND

1. On September 15, 2011 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. The Debtor has continued in the management of its business and the operation of its affairs as a debtor and debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

3. Upon information and belief, no request for the appointment of a trustee or examiner has been made in this Chapter 11 case and no statutory committees have been appointed or designated.

4. The Debtor is a limited partnership formed in Delaware on March 13, 2007. The Debtor owns 100% of the limited liability company membership interests in twenty-seven (27) special purpose entities (the "Special Purpose Entities"), which own, in the aggregate, approximately 1,200 residential units and 50 commercial units located within 47 buildings located in New York, New York (the "Real Properties"). The Real Properties are primarily located in an area bounded by 100th Street to the south, 188th Street to the north, Pleasant Avenue to the east and Park Avenue to the west.

### A. The Senior Lender and the Foreclosure Action

5. On or about September 10, 2009, a foreclosure proceeding was commenced in the Supreme Court of the State of New York, County of New York (the "State Court") known by caption, <u>The Bank of New York Mellon Trust, National Associated f/k/a The Bank of New York Trust Company, National Association, as Trustee for the Morgan Stanley Capital 1, Inc. Commercial Mortgage Pass-through Certificates, Series 2007-IQ14, Acting By and Through Its</u>

<u>Special Servicer, Centerline Servicing, Inc. v. DDEH 291 Pleasant LLC et. al.</u>, 602806/09 (the "Foreclosure Action"). It should be duly noted that at some point subsequent to the commencement of the Foreclosure Action, Centerline Servicing Inc., as Special Servicer, has since changed its name to C-III Asset Management LLC ("C-III"). The plaintiff (the "Plaintiff" or "Senior Lender") in the Foreclosure Action sought to foreclose on a commercial mortgage it held secured by a single lien against the Real Properties in the amount of approximately $190,000,000.00. Indeed, each of the Special Purpose Entities is listed as named defendants in the Foreclosure Action. The Senior Lender does not have a security interest in the membership interests of the Debtor but is allegedly secured against the Debtor's assets.

6. As a result of the Foreclosure Action and the subsequent appointment of a receiver (the "Receiver"), the books and records (the "Books and Records") pertaining to the assets (i.e. the Real Properties) that are owned by the Special Purpose Entities, in which the Debtor retains a 100% membership interest in and to, are in the possession and control of the Receiver and/or his property manager (the "Property Manager").

7. Upon filing the instant bankruptcy, the Debtor, through counsel, contacted the Receiver and his counsel for the purpose of retrieving the books and records as they relate to the Debtor's assets and liabilities. The Debtor was informed that due to Plaintiff's pre-petition denial, the Receiver would not turn over the Books and Records unless and until an Order of the Bankruptcy Court was entered directing the Receiver and the Property Manager to comply with such a request. As a result, the Debtor filed (a) a motion seeking the entry of an order directing the Receiver and/or the Property Manager to turn over the Books and Records and (b) a motion seeking the extension of time to file its bankruptcy schedules and statement of financial affairs to

a date subsequent to the substantial receipt of the Books and Records (collectively, the "Motions"). The Motions are presently returnable on November 29, 2011[1].

B. **The Mezzanine Loan**

8. Pursuant to various loan documents dated on or about March 19, 2011 (the Loan Documents"), the Debtor has the following alleged secured creditor: a mezzanine loan (the "Mezzanine Loan") held by Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., in the purported amount of $27,561,855.83. BOA is the largest alleged secured creditor of the Debtor.

9. Moreover, upon information and belief, through certain intervening transactions and agreements, C-III had, and retains, certain control and/or rights pertaining to the Mezzanine Loan.

10. Upon information and belief, Steven L. Wasser is the managing director of BOA and an individual with knowledge and information of the Mezzanine Loan. Indeed, prior to the instant bankruptcy filing, and without any prior notice, Steven L. Wasser signed and forwarded a Notification of Disposition of Collateral seeking to sell all of the Debtor's membership interests in the Special Purpose Entities through a UCC foreclosure sale that was scheduled to be held on September 16, 2011 (the "UCC Sale").

11. Based upon documents reviewed to date by the Debtor and its counsel, including the Loan Documents, there are issues and concerns that arise in connection with the validity, security, extent and origin of any purported lien held in connection with the Mezzanine Loan. As a result of this review, the Debtor has reason to believe that BOA, as the purported holder of

---

[1] The Motions were originally scheduled to be heard before the Bankruptcy Court on October 26, 2011. However, the Receiver requested that the Motions be adjourned in order to provide him with ample time to retain bankruptcy counsel.

the Mezzanine Loan, may not have a valid lien against the Debtor's membership interests in the Special Purpose Entities.

12. Accordingly, the Debtor seeks an Order of this Court in order to fully investigate the Debtor's pre-petition financial affairs. An examination of the Debtor's pre-petition financial affairs includes, among other things, an examination of the status, validity, perfection, extent and/or priority of BOA's lien and monetary claim in this case.

13. The Debtor has reason to believe that BOA, by and through the Witness, has knowledge, documentation and information that will allow the Debtor to complete its investigation of the Debtor's pre-petition financial affairs for the benefit of the estate's creditors.

## **RELIEF REQUESTED AND BASIS THEREFOR**

14. In order to make a proper determination as to the validity and/or extent of the purported lien held by BOA secured against the membership interests of the Debtor in and to the Special Purpose Entities, the Debtor requires certain documents and information regarding the Mezzanine Loan.

15. It is appropriate and necessary for the Debtor to investigate the Debtor's financials, and propose a plan that is in the best interests of the creditors. Accordingly, the Debtor believes that an examination of BOA, by the Witness, is necessary in order for the Debtor to obtain necessary information concerning liens and claims against the estate, or the lack thereof, and if necessary, to commence an adversary proceeding to determine the validity, priority or extent of BOA's subject lien and/or related monetary claim. An Order compelling the examination of BOA by its Witness and the production of documents therefrom, will allow the Debtor to analyze and assess the subject lien and claim.

16.     The Court may order the examination of any entity pursuant to Bankruptcy Rule 2004 on motion of any party in interest.  Under § 1109(b) of the Bankruptcy Code, the Debtor is a party in interest.  See 11 U.S.C. § 1109(b).  The Debtor further submits that Bankruptcy Rule 2004 does not require such motion to be made on notice.  See *Advisory Committee Note to Bankruptcy Rule 2004 (a)* which provides that "a motion for (a Rule 2004 Examination) may be heard *ex parte* or it may be heard on notice."

17.     The scope of examination under Bankruptcy Rule 2004(b) may include, among many other things: any matter that may relate to the property and assets of the estate, the financial condition of the debtor, and any matter which may affect the administration of a debtor's estate. See Bankruptcy Rule 2004.  See also Martin v. Keybank of New York, 208 B.R. 807, 810 (N.D.N.Y 1997) (the general rule is that the scope of a Rule 2004 Examination is very broad and great latitude of inquiry is ordinarily permitted); In re CENA's Fine Furniture Inc., 109 B.R. 575, 577 n.2 (E.D.N.Y 1990) (the scope of a Rule 2004 examination is unfettered and broad.....examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds) (internal citations omitted); In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y 1996) (noting that Rule 2004 Examinations have been likened to "fishing expeditions into general matters and issues regarding the administration of the bankruptcy estates").

18.     The scope of a Bankruptcy Rule 2004 examination is very broad and is commonly recognized as more in the nature of a "fishing expedition." See In re W&S Investments, Inc., No. 91-35830, 1993 WL 18272, at *2 (9th Cir. Jan. 28, 1993); In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985).  The purpose of a Rule 2004 examination is to assist the investigator in revealing the nature and extent of the estate and to discover assets of the debtor that may have been intentionally or unintentionally concealed.  See In re Bennett Funding Group,

Inc., 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996) (stating rule) (citing In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991)).  Accordingly, Bankruptcy Rule 2004 affords both debtors and creditors the broad rights of examination of a party's documents and records.  See Snyder v. Society Bank, 181 B.R. 40, 41 (S.D. Tex. 1994), aff'd, 52 F.3d 1067 (5th Cir. 1995) (citing Cameron v. United States, 231 U.S. 710, 716 (1914)).  Moreover, all third-party non-debtors who can be shown to have a relationship with the debtor are subject to examination.  See In re Olsen, No. UT-98-088, 1999 WL 513846, at *2 (10th Cir. B.A.P. June 24, 1999); Bennett Group, 203 B.R. at 27-28.

19. The oral examination of BOA by its Witness and the production of documents by BOA by its Witness are not only authorized by Bankruptcy Rule 2004, but are in the best interests of the Debtor's estate and creditors.  The Debtor wishes to investigate the Debtor's pre-petition transfers, financial affairs and business transactions.  Accordingly, the Debtor submits that the production and turnover of the documents in BOA's and Witness' possession, custody and/or control are necessary and warranted to further the administration of this estate.

20. Pursuant to the Proposed Order, (a) within fifteen (15) days of service of a subpoena, issued in accordance with Federal Rule of Civil Procedure 45, made applicable by Bankruptcy Rules 9016 and 2004(c), documents detailed in the Proposed Order are to be turned over to the Debtor's counsel by BOA, and (b) within twenty (20) days of service of such subpoena the examination of BOA by its Witness shall occur.

21. Rule 45(b)(1) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9016, states, in pertinent part, "[s]erving a subpoena requires delivering a copy to the named person . . . ."  Second Circuit Courts have weighed in on the subject and adopted the minority view that personal service is not required by Rule 45.  In First Nationwide Bank v.

Shur (In re Shur), 184 B.R. 640, 642 (Bankr.E.D.N.Y. 1995), the Court held that personal service is not required under Rule 45. The Court stated that "'delivering' a copy of a subpoena, for purposes of Rule 45, includes any act or series of acts that reasonably assures the entity to which it is addressed fair and timely notice of its issuance, contents, purpose and effect." Id. at 642. The Court held that the "only limitation upon service under Rule 45 is that the procedure employed be reasonably calculated to give the non-party actual notice of the proceedings and an opportunity to be heard." Id. at 644 (internal citation omitted). Similarly, in King v. Crown Plastering Corp., 170 F.R.D. 355, 356 (E.D.N.Y. 1997), the Court stated that the language of Rule 45 does not require in-hand service nor prohibit alternative means of service. The Court reasoned as Rule 45(b)(3) states that proof of service is accomplished by filing with the clerk of the court a "statement of the date and manner of service," the drafters must have contemplated forms of service other than personal service. Id. at 356. Otherwise, the reference to "manner of service" would have been superfluous. The Court concluded that in hand delivery of a subpoena was not required "so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness." Id. See also, Cordius Trust v. Kummerfeld, 2000 WL 10268 at *2 (S.D.N.Y.) (alternative service by certified mail was adequate "delivery" under Rule 45 as it "reasonably insures actual receipt of the subpoena by the witness"); First City Texas Houston, N.A. v. Rafidain Bank, 281 F.3d 48 (2d Cir. 2002) (service of a subpoena by attaching a copy to the door and mailing a copy to witness' counsel upheld); Ultradent Products, Inc. v. Hayman, 2002 U.S. Dist. Lexis 18000, at *9-10 (S.D.N.Y. Sept. 24, 2002) (service of a subpoena upon the Secretary of State as designated agent of the corporation pursuant to New York procedural law permitted); Briarpatch Limited, L.P. v. Geisler Roberdeau, Inc., 2006 WL 1311967 at *2

(S.D.N.Y.) (service in accordance with "New York procedural laws should be sufficient to satisfy Rule 45 requirements.").

22.  In view of these precedents, it is requested that the Debtor be authorized to serve the Order and subpoena on BOA by first class mail courier as a means reasonably calculated to provide notice to BOA and the Witness and delivered to 214 North Tryon Street, NC1-027-15-01, Charlotte, NC 28255, and that such service be deemed good and proper service of such Order and subpoena.

23.  By virtue of the foregoing, the Debtor respectfully submits that it is entitled to the relief requested herein.

24.  No prior application for the relief requested herein has been made by the Debtor to this or any other court.

25.  The Debtor submits that this Application cites the relevant statutory authority and rules for the relief requested, and that this Application complies with Local Bankruptcy Rule 9013-1. Therefore, no separate memorandum of law is required in connection with this Application.

**WHEREFORE**, the Debtor respectfully requests entry of an Order in the form annexed hereto, and granting such other and further relief as this Court deems just and proper.

Dated: October 20, 2011
Wantagh, New York

**LaMonica Herbst & Maniscalco, LLP**
Attorneys for the Chapter 11 Debtor

By:  *s/ Joseph S. Maniscalco*
Joseph S. Maniscalco, Esq.
A Partner of the Firm
3305 Jerusalem Avenue
Wantagh, NY 11793
(516) 826-6500

*M:\Documents\Company\Cases\East Harlem Property Holdings, LP\Rule 2004's\2004 App re Wasser.doc*